IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY BUSCH, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 12-3490-CV-S-ODS |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS</u>

Pending is Defendant's Motion to Dismiss, or in the alternative, for a More Definite Statement (Doc. # 19). The Motion is granted in part and denied in part.

I. BACKGROUND

The facts of this case are derived from the factual allegations in Plaintiffs' Complaint. Defendant, Allstate Insurance Company ("Allstate"), sells insurance covering automobile loss for physical damage and collisions. As part of its business, Allstate inspects vehicles of its insured making claims for damage. Complaint, ¶ 11. The inspection process involves assessing and valuing the damage to vehicles and estimating repair costs. *Id.* ¶ 12. This process is conducted by Allstate adjusters. Allstate employed Plaintiffs Jeffrey Busch, James Bauer, Lonnie Carter, Gary Priaulx, and Russell Vandiver as adjusters, and employed Plaintiff Keith Wangerin as an adjuster supervisor.

During Plaintiffs' employment, Plaintiffs were required to complete vehicle property damage estimates. They were instructed to select an input into Allstate's computer software marking each estimate as "drive-in," "field," or "unknown," among other possible classifications. *Id.* ¶ 22. A satisfaction survey was generated and sent to the insured customer if an adjuster entered "drive-in" or "field." However, a customer satisfaction survey was not generated when an estimate was classified as "unknown." The most common use of "unknown" estimate inputs was "during drive-in estimates, when an insured's vehicle was damaged, but capable of being driven to an inspection center." *Id.* ¶ 26. Plaintiffs allege that their supervisors and managers expressly instructed Plaintiffs to

input estimates as "unknown" when they encountered an angry customer who was unlikely to provide positive feedback.  *Id.* ¶ 25.

In order to keep costs low, Allstate also instructed its employees to undervalue or "lowball" the estimates of damages and repair of drive-in customers as compared to customers whose vehicles were not operational and were not able to be driven to an inspection center.  *Id.* ¶ 27-28.  As a result, "drive-in insureds were frequently angry because Allstate provided an unrealistically low vehicle repair estimate."  *Id.* ¶ 29.  During such a situation, Allstate instructed Plaintiffs to use the "unknown" function in order to avoid customer satisfaction surveys.  *Id.* ¶ 30.  "Such practice concealed from insureds the fact that they had been provided with inferior repairs at a higher cost, thereby increasing Allstate's profitability."  *Id.* ¶ 31.

On multiple occasions (the Complaint does not specify when), Plaintiffs complained to Allstate senior management about the conduct of their supervisors and managers and the policies and practices instituted by Allstate.  In late 2011, Allstate changed its instructions to employees and advised Plaintiffs to no longer use the "unknown" function and termed the conduct as "falsification of records."  Between January 3, 2012, and January 5, 2012, Allstate terminated Plaintiffs, advising them, as well as other insurance industry colleagues, that their termination was a result of "falsification of records."

Plaintiffs' assert three causes of action: (1) Wrongful Termination in Violation of Public Policy (Count I); (2) Defamation (Count II); and (3) Intentional Infliction of Emotional Distress (Count III).

## II. STANDARD

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]."  *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

### III. DISCUSSION

#### A. Count I—Wrongful Termination in Violation of Public Policy

Defendant argues Count I's claim for wrongful termination in violation of public policy should be dismissed because (1) Plaintiffs failed to satisfy their burden to demonstrate how the reported conduct violates public policy; (2) Plaintiffs never refused to perform any act; and (3) Plaintiffs' wrongful termination claim is barred by the doctrine of *in pari delicto*. Alternatively, Defendant moves for a more definite statement as to Count I. The Motion is denied.

"Missouri maintains the default rule of at-will employment for employees without employment contracts for a definite term: an employer may discharge an at-will employee for any reason or for no reason without liability for wrongful discharge." *Taylor v. St. Louis Cnty. Bd. of Election Comm'rs*, 625 F.3d 1025, 1027 (8th Cir. 2010) (per curium) (citing *Sivigliano v. Harrah's N. Kan City Corp.*, 188 S.W.3d 46, 48 (Mo. Ct. App. 2006)). However, Missouri courts have recognized a narrow public policy exception to the at-will-employment doctrine:

3

An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violating of law to superiors or public authorities.

*Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 84 (Mo. banc 2010).

First, Defendant argues Count I should be dismissed because Plaintiffs have failed to demonstrate how Defendant's conduct violates public policy. The Court disagrees. The Complaint states, "[i]n instructing its employees to undervalue the estimates of 'drive-in' customers and inflate public customer satisfaction rates, Allstate acted in a manner contrary to public policy as reflected in R.S.Mo. §§ 375.445, 375.144, 570.140, and 570.160 and C.S.R. 100-1.010-300, among other statutory and regulatory violations." Complaint, ¶ 42. The Complaint provides sufficient detail to put Defendant on notice of the bases upon which Plaintiffs claim a right to relief by citing to specific sections of the Missouri revised statutes.[1] Finally, if Defendant thinks the conduct complained of does not violate the statutes cited and therefore not violative of public policy, that is a different argument that Defendant has not made.

Second, Defendant contends Count I should be dismissed because the Complaint does not allege that Plaintiffs refused to perform any act. However, Plaintiffs argue, and the Court agrees, that the tort of wrongful termination in violation of public policy does not require a plaintiff to refuse to act in furtherance of the alleged wrongdoing. "An at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Flesher v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 92 (Mo. 2010) (en banc). An employee has a cause of action in tort for wrongful discharge based on the public-policy exception "[i]f an employer terminates an employee for either reason." *Id.* Here, Plaintiffs have alleged that "[o]n multiple occasions, Plaintiffs complained to Allstate senior management of the conduct of their supervisors and managers and the policies and practices being instituted by Allstate." Complaint, ¶ 43. Thus, Plaintiffs have alleged that they were wrongfully

---

[1] If Plaintiffs have alleged a statutory or regulatory violation then it should be contained in the Complaint. If not, the allegation is not part of the Complaint.

terminated pursuant to the second reason—for reporting wrongdoing or violations of law to superiors or public authorities. Accordingly, Defendant's argument fails.

Next, Defendant asserts that Count I is barred by the doctrine of *in pari delicto*. Specifically, Defendant argues Plaintiffs have admitted in their Complaint that they participated in wrongful conduct, and therefore they cannot prevail on Count I. *In pari delicto* is a common-law defense and is often described as the legal equivalent of the equitable doctrine of unclean hands. *Alberici Constructors, Inc. v. Oliver*, No. 4:11-cv-744-CEJ, 2012 WL 6738491 (E.D. Mo. Dec. 31, 2012) (citing *Dobbs v. Dobbs Tire & Auto Ctrs., Inc.*, 969 S.W.2d 894, 987 (Mo. Ct. App. 1998)). A plaintiff may not recover when he has participated in the defendant's illegal conduct and is equally culpable. *Id.*

Plaintiff argues, and the Court agrees, that the determination of whether the parties are *in pari delicto* is premature. No evidence has been presented to the Court to determine whether the doctrine applies in this case. Plaintiffs' Complaint alleges that Plaintiffs used the "unknown" input as instructed by Allstate, but that they had complained about the policy on multiple occasions, and were ultimately terminated for complaining about the policy.[2] Complaint, ¶ 32, 34, 44. The mere allegations in the Complaint are not enough at this stage in the proceedings to determine whether Count I is barred by the doctrine of *in pari delicto*. Even if Plaintiffs and Defendant both participated in wrongful conduct, it does not follow that both parties are *in pari delicto*. "[W]here both parties are in delicto, concurring in illegal acts, it does not follow that they are in pari delicto, for there may be, and often are, very different degrees in their guilt." *White v. McCoy Land Co.*, 87 S.W.2d 672, 686-87 (Mo. Ct. App. 1935).

Finally, the Court declines to grant Defendant's motion for a more definite statement for Count I. Motions for more definite statement "are designed to strike at unintelligibility rather than lack of detail in the complaint." *Batten v. Fairway Capital Recover, LLC*, No. 12-04224-CV-NKL, 2012 WL 5866564, at *2 (W.D. Mo. Nov. 19, 2012) (internal quotations omitted). Plaintiffs' Complaint is intelligible; the wrongful termination theory is pled in a distinct count, and it contains a factual theory of how Defendant wrongfully terminated Plaintiffs in violation of public policy. Count I's legal and factual theory is clear enough to allow Defendant to reply. Defendant will be able to acquire more information with respect to

---

[2] In addition, there is no suggestion the misuse of the "unknown" code violated public policy—so this probably cannot be the basis for Plaintiffs' wrongful termination claim or, consequently, a basis for Defendant's in pari delicto defense.

5

Count I during the discovery process. Accordingly, Defendant's Motion to Dismiss, or in the alternative, for a more definite statement with respect to Count I is denied.

### B. Count III—Intentional Infliction of Emotional Distress

Defendant moves to dismiss Count III and argues that under Missouri law, employees cannot recover for emotional distress arising in the course of their employment or resulting from their termination. In response, Plaintiffs argue that because they have properly pled a cause of action for wrongful termination pursuant to an exception to Missouri's at-will employment doctrine, they may contemporaneously maintain an action for intentional infliction of emotional distress pursuant to *Beasley v. Affiliated Hospital Products*, 713 S.W.2d 557, 561 (Mo. Ct. App. 1986).

Missouri law is clear that at-will employees cannot recover for emotional distress resulting from their termination because doing so would "subvert the law of this state to allow a claim for termination by an at will employee to be brought under the guise of an action for emotional distress." *Neighbors v. Kirksville College*, 694 S.W.2d 822, 824 (Mo. Ct. App. 1985). Plaintiff points out, and the Court recognizes, that in *Beasley v. Affiliated Hospital Products*, the Missouri Court of Appeals allowed an employee to maintain both a claim for wrongful termination and a claim for intentional infliction of emotional distress when the former claim was brought pursuant to Missouri's public policy exception to the employee at-will doctrine. 713 S.W.2d at 56. Plaintiffs argue that because they are also bringing a wrongful termination claim pursuant to Missouri's public policy exception like in *Beasley*, they should also be allowed to bring a claim for intentional infliction of emotional distress. The Court disagrees.

Here, Plaintiffs have failed to allege any additional facts that establish an independent basis for intentional infliction of emotional distress. The Complaint states "Allstate's conduct in terminating Plaintiffs in violation of public policy and defaming Plaintiffs . . . was extreme and outrageous." Complaint, ¶ 54. The same conduct alleged in Counts I and II is the same basis for Count III. Plaintiffs fail to plead any additional facts that establish an independent basis for intentional infliction of emotional distress. It may be that in another case, a plaintiff would be able to contemporaneously maintain an action for intentional infliction of emotional distress with an action for wrongful termination pursuant to Missouri's public policy exception if additional facts were pled. Such a situation has not

6

been presented in this case. If Plaintiffs are not successful on Count I, the only remaining alleged wrongful conduct would consist of defamation. However, Missouri courts will not allow a claim for intentional infliction of emotional distress to lie where the offending conduct consists only of defamation. *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. 2007). Accordingly, Defendant's Motion to Dismiss Count III is granted.

## IV. CONCLUSION

Defendant's Motion to Dismiss Count I, or in the alternative, for a more definite statement, is denied. Defendant's Motion to Dismiss Count III is granted.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 2, 2013   UNITED STATES DISTRICT COURT